**Kathleen Lynn BEMENDERFER, M.D., Appellant–Defendant,**

**v.**

**Lois Emogene WILLIAMS, Personal Representative of the Estate of Hoy Sturgeon, Deceased, and Lois Emogene Williams, As Administratrix of the Estate of Dorothy L. Sturgeon, Deceased, Appellees–Plaintiffs.**

No. 49A02–9808–CV–663.

Court of Appeals of Indiana.

Dec. 2, 1999.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Daniel R. Fagan, Bingham Summers Welsh & Spilman, Indianapolis, Indiana, Attorneys for Appellant.

Scott R. Severns, Severns Associates, Thomas R. Ruge, Brian A. Statz, Lewis & Kappes, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant, Kathleen Lynn Bemenderfer, M.D. (Bemenderfer), appeals the trial court's denial of her motion for partial summary judgment on the issue of damages in favor of the Plaintiffs–Appellees, Lois Emogene Williams (Williams), as Personal Representative of the Estate of Hoy Sturgeon, Deceased, and Lois Emogene Williams, as Administratrix of the Estate of Dorothy L. Sturgeon, Deceased.[1]

Bemenderfer's motion for partial summary judgment was initially granted by the Honorable John F. Hanley on July 26, 1996. On October 30, 1996, Williams filed a petition requesting certification for interlocutory appeal. On January 1, 1997, the Honorable Thomas J. Carroll assumed responsibility for Marion County Superior Court No. 6. At an unrecorded hearing on February 10, 1997, Judge Carroll indicated to the parties that he disagreed with the trial court's previous order granting summary judgment and therefore, he would not grant the petition for certification but he would entertain a motion by Williams to

---

1. Oral argument was held on July 20, 1999.

reconsider the grant of summary judgment. On February 21, 1997, the trial court granted Williams' motion to reconsider and vacated the prior order granting Bemenderfer's motion for partial summary judgment. On July 21, 1998, the parties entered into an agreed Final Judgment preserving for appeal the issue of the denial of Bemenderfer's motion for partial summary judgment regarding the appropriate measure of damages.

We affirm the trial court's denial of Bemenderfer's motion for partial summary judgment.

## ISSUES

The following issues are raised by Bemenderfer:

1. Whether the trial court erred in denying Bemenderfer's motion for partial summary judgment which requested that the amount of damages recoverable by the Estate of Dorothy L. Sturgeon be limited to Dorothy L. Sturgeon's (Dorothy) medical, hospital, funeral, burial, and administrative expenses, where Dorothy no longer had a surviving spouse or dependent next of kin.

2. Whether the trial court erred in denying Bemenderfer's motion for partial summary judgment which requested that the amount of damages recoverable by the Estate of Hoy Sturgeon for the loss of his wife's consortium be limited to the three (3) days from the date of Dorothy's surgery to the date of her death.

## FACTS AND PROCEDURAL HISTORY

Dorothy consulted with Bemenderfer regarding unexplained post-menopausal vaginal bleeding. Bemenderfer recommended a laparoscopy, a gynecological diagnostic procedure, which was performed at the Indiana Surgery Center, on December 21, 1992. Following the surgery, Dorothy experienced pain and vomiting and was brought by ambulance to Community Hospital on December 23, 1992. At the hospital it was discovered that Bemenderfer

had punctured Dorothy's colon during the laparoscopy causing feces to invade her abdominal cavity. Emergency surgery was performed; however, Dorothy died the next day.

Dorothy was 76 years old at the time of her death. Her husband, Hoy Sturgeon (Hoy) was 82 years old and was suffering from Alzheimer's and Parkinson's disease. Dorothy had cared for her husband in their home prior to her death, and after her death Hoy entered a nursing home. This nursing home care cost Hoy in excess of $100,000.00, which eroded his life savings. In the nursing home, Hoy refused to eat and lost 33 pounds in the first three months. Because of his condition, Hoy was unable to fully comprehend Dorothy's death, and spent his days wandering the halls of the nursing home searching for his wife and calling out her name. Hoy died on April 9, 1995. Lois Emogene Williams (Williams), is the only child of Hoy and Dorothy, and is the personal representative of both of their estates.

On June 3, 1993, Hoy and Williams, as the administratrix of Dorothy's estate, filed with the Indiana Department of Insurance a proposed Complaint against Bemenderfer alleging medical malpractice and wrongful death. Hoy and Williams subsequently filed their action in the Marion County Superior Court No. 6 on October 21, 1994. After Hoy's death on April 9, 1995, Williams, as personal representative of Hoy's estate, was substituted for Hoy in this action.

On January 9, 1996, Bemenderfer moved for partial summary judgment on the measure of damages recoverable by the two estates. In her motion, Bemenderfer asserted that Dorothy's estate is allowed to recover damages only for Dorothy's medical, hospital, funeral, burial, and administrative expenses. Bemenderfer further argued that Hoy's estate is entitled to recover only Hoy's loss of his wife's consortium for the three (3) days from the date of Dorothy's surgery to the date of her death. Williams replied to Bemender-

fer's motion and asserted that Hoy's estate is entitled to recover all damages otherwise recoverable by Hoy as the surviving dependent spouse of Dorothy under the Medical Malpractice Act and the Wrongful Death Statute. These damages include the loss of Dorothy's love, care and affection, as well as the loss of her services as his wife and care-giver, including the cost of his nursing care and damages for the suffering he endured due to the loss of his wife. Additionally, Williams asserted that Hoy's claims survive to the benefit of his estate under the Indiana Survival Statute.

As mentioned, Bemenderfer's motion for partial summary judgment was initially granted by the Honorable John F. Hanley. However, on February 21, 1997, the Honorable Thomas J. Carroll granted Williams' motion to reconsider and vacated the Court's prior order granting Bemenderfer's motion for partial summary judgment.

On July 21, 1998, the parties entered into an "Agreed Final Judgment and Agreement Preserving for Appeal the Issue of the Appropriate Measure of Damages" (Final Judgment). In this Final Judgment the parties agreed to a judgment amount but stipulated that Bemenderfer could pursue this appeal on the issue of damages alone.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing a denial of summary judgment "our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Thomas v. Victoria Fire & Cas. Ins. Co.*, 706 N.E.2d 212, 214 (Ind.Ct.App.1999), *trans. denied.* We consider the facts in the light most favorable to the nonmoving party in order to determine whether there are genuine issues of material fact concerning an essential element of a claim. *Foursquare Tabernacle Church of God in Christ v. Department of Metropolitan Development of Consolidated City of Indianapolis*, 630 N.E.2d 1381, 1384 (Ind.Ct. App.1994). Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169 (Ind.1996).

### II. Wrongful Death Damages

Bemenderfer argues that Dorothy's estate is limited in the damages it may collect as a result of the wrongful death action. She claims that these damages are limited to Dorothy's medical, hospital, funeral, burial, and administrative expenses, because at the time the final judgment was entered, Dorothy no longer had a surviving spouse or dependent next of kin. Bemenderfer further contends that Hoy's estate is not entitled to recover any damages for Dorothy's death. Finally, Bemenderfer argues that the trial court improperly denied her motion for partial summary judgment based on this issue.

The Indiana wrongful death statute, Ind. Code § 34–23–1–1,[2] indicates two sets of

**2.** Ind.Code § 34–23–1–1 provides:

(1) When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission.

(2) When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission.

(3) That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof.

potential beneficiaries in a wrongful death action and sets forth the damages recoverable by these beneficiaries. The decedent's estate can recover medical, hospital, funeral, and burial expenses. *Id.* Additionally, if there is a widow or widower, dependent children, or dependent next of kin, they are entitled to recover the "remainder" of the damages "if any." *Id.* These remaining damages include losses of money, services, material benefits, love, and affection. *Southlake Limousine and Coach, Inc. v. Brock,* 578 N.E.2d 677, 679 (Ind.Ct.App.1991).

■ The issue to be determined then is whether the recovery of wrongful death damages by a decedent's estate, for the benefit of the surviving dependent beneficiary ("widow or widower, dependent children, or dependent next of kin"), is precluded by the death of the beneficiary during the pendency of the wrongful death action. Williams asserts that the wrongful death statute limits damages to those recoverable by the estate only when the decedent "departs this life leaving no such widow or widower" surviving her. Ind. Code § 34–23–1–1. When Dorothy died she did leave behind a surviving widower, Hoy. Williams contends that the plain language of the statute does not require that the surviving spouse or beneficiary be living at the time the judgment is received; only that the decedent's spouse or benefi-ciary be living at the time of the decedent's death.

When construing a statute, we are guided by several rules of statutory construction. First, when a statute is clear and unambiguous on its face, the court need not, and indeed must not, interpret the statute. Rather, we give the statute its plain and clear meaning. Additionally, when construing a statute, the legislature's definition of a word binds us. When the legislature has not defined a word, we give the word its common and ordinary meaning. In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. *Kaghann's Korner, Inc. v. Brown & Sons Fuel Co., Inc.,* 706 N.E.2d 556, 561 (Ind. Ct.App.1999), *clarified on reh'g on other grounds,* 711 N.E.2d 1286 (citations omitted). Williams argues that the plain meaning of the Wrongful Death statute requires that the surviving dependent beneficiary only be living at the time of the decedent's death and does not require the surviving beneficiary to be living at the time wrongful death damages are awarded. Williams contends that if the legislature had intended the wrongful death statute to require the surviving dependent beneficiary to be living at the time the judgment is received it could have easily stated so in the statute, but it does not. Williams further asserts that even if case

---

(4) The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

(5) **If such decedent depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him, the damages inure to the exclusive benefit of** the person or persons furnishing necessary and reasonable hospitalization or hospital services in connection with the last illness or injury of the decedent, performing necessary and reasonable medical or surgical services in connection with the last illness or injury of the decedent, to a funeral director or funeral home for the necessary and reasonable funeral and burial expenses, and to the personal representative, as such, for the necessary and reasonable costs and expenses of administering the estate and prosecuting or compromising the action, including a reasonable attorney's fee, and in case of a death under such circumstances, **and when such decedent leaves no such widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees.**

*Id.* (spacing and numbers added) (emphasis added).

law holds otherwise, the plain meaning of a statute cannot be altered by case law. *See Indiana Dep't of State Revenue v. Horizon Bancorp*, 644 N.E.2d 870, 872 (Ind.1994) (a statute's "plain and obvious meaning may not be enlarged or restricted.")

Nevertheless, Bemenderfer argues that case law has held that the wrongful death damages recoverable by an estate for the benefit of a dependent beneficiary do not survive the death of the beneficiary while the action is pending. *In re Bruck*, 632 N.E.2d 745, 748 n. 2 (Ind.Ct.App.1994); *Thomas v. Eads*, 400 N.E.2d 778 (Ind.Ct. App.1980); *Dillier v. Cleveland, Cincinnati, Chicago & St. Louis Railway Co.*, 34 Ind.App. 52, 72 N.E. 271 (1904).

In *Dillier*, a widow brought an action against a railroad for the wrongful death of her husband. *Dillier*, 72 N.E. at 272. During the pendency of the action the widow died, and this court held that the damages she would have been entitled to for the wrongful death of her husband did not pass to her estate. *Id.* at 273. This court based its decision of the fact that there existed no other surviving next of kin who suffered a pecuniary loss as a result of the husband's death. *Id.* Neither the widow nor her husband had children or other dependents. *Id.* at 272. Both parties refer us to the following language from *Dillier:*

> Unless at the commencement of the action, and also at the time of awarding the damages, there be living some person or persons of whom it can be said that the law implied damage from the death of plaintiffs decedent, **or who, being next of kin to him, may be said to have suffered pecuniary loss through his death**, there can be no recovery under the statute.

*Id.* at 273 (emphasis added).

Bemenderfer contends that this holding requires us to find that the wrongful death damages Hoy would have been entitled to

do not pass to his estate. Williams, on the other hand, focuses on the emphasized language, and contends that this separate clause allows Williams, as Dorothy's next of kin, an opportunity to prove that she has suffered pecuniary loss as a result of the wrongful death of her mother, Dorothy. We agree with Williams.

 In *Dillier*, this court concluded that the surviving spouse's estate could not recover the wrongful death damages the surviving spouse would have been entitled to had she lived; however, the parties at issue in *Dillier* had no children and thus, there was no surviving next of kin to attempt to prove a claim for pecuniary loss. *Id.* at 272–273. Williams, as the only child of Hoy and Dorothy, claims she suffered actual pecuniary losses since Hoy was forced to use his life savings (and her inheritance) to pay for nursing care that Dorothy would have freely provided if she was living. This is an issue of fact inappropriate for summary judgment.

Bemenderfer also relies on *Thomas*, 400 N.E.2d 778.[3] In *Thomas*, an unmarried mother was killed in an automobile accident in which her only child was injured and subsequently died one-half hour later. *Thomas*, 400 N.E.2d at 779. The court concluded that the child's estate could not maintain an action for the wrongful death of the mother. *Id.* at 780. In *Thomas*, this court reaffirmed *Dillier* and reasoned that although Indiana's wrongful death statute has been amended several times, the legislature has never taken any action to vary the holding of *Dillier*. *Thomas*, 400 N.E.2d at 783. "If the legislature had intended to amend the statute to prohibit the abatement of the right to recovery on behalf of deceased dependent beneficiaries, it could have easily done so." *Id.* The *Thomas* court further noted that: "It has long been held in Indiana that when a court interprets a statute and the legislature fails to take action to change that interpretation, the legislature is presumed

---

**3.** Bemenderfer additionally refers us to *In re Bruck*, 632 N.E.2d 745, a choice of law case, which in a footnote simply cites to the holding in *Thomas*.

to have acquiesced in the court's interpretation." *Id.*

However, we agree with Williams that *Thomas* is factually distinguishable from the case at bar, because in *Thomas,* the decedent was unmarried and was survived by her only child for just one-half hour after her death. Also, in *Thomas* there was no next of kin of the decedent's claiming a pecuniary loss. Here, Hoy lived for twenty-seven months after the death of Dorothy and during this time period, from the date of Dorothy's death, December 24, 1992, until the date of Hoy's death, April 9, 1995, Hoy suffered additional and significant damages. Furthermore, Dorothy and Hoy were both survived by their daughter, who alleges she suffered a pecuniary loss as a result of Dorothy's death.

■ Williams additionally argues that Indiana's "survival statute," Ind.Code § 34–9–3–1, requires that Bemenderfer remain liable for all damages incurred by Hoy, regardless of his death during the pendency of this action. Indiana's "survival statute" provides in pertinent part: "If an individual who is entitled or liable in a cause of action dies, the cause of action survives and may be brought by or against the representative of the deceased party …" Ind.Code § 34–9–3–1. Williams contends that a plain reading of this statute operates to preserve Hoy's cause of action even though he died prior to the conclusion of his case, because Hoy is an individual who is "entitled" in this wrongful death cause of action. Williams further asserts that because the wrongful death statute and the survival statute are sections within the same Act, their provisions must be construed in harmony. "In construing a statutory provision, a statute must be considered as a whole, each part examined not in isolation but with reference to all the other companion provisions. This Court will construe an individual provision so as to harmonize it with other sections of the enactment." *Indiana Dep't of Public Welfare v. Payne,* 622 N.E.2d 461, 466 (Ind. 1993) (citations omitted).

Bemenderfer responds that the wrongful death statute grants the right to maintain a wrongful death action only to the decedent's personal representative, and since Hoy was not Dorothy's personal representative, Hoy had no right of action under the wrongful death statute which was capable of surviving his death. In *Thomas* we held that "the general survival of actions statute does not apply to the case at bar because [the child] had no common law right of action for the wrongful death of his mother … and since under the [wrongful death] statute only the personal representative of his mother's estate has a right to bring an action which was capable of surviving." *Thomas,* 400 N.E.2d at 784.

■ However, when a person is pursuing a medical malpractice claim against a health care provider concerning a death of a patient, it is not required that the claimant be first appointed personal representative as is required by the Wrongful Death statute. *Community Hospital of Anderson and Madison County v. McKnight,* 493 N.E.2d 775, 776 (Ind.1986). Under the *McKnight* decision, Hoy has a separate claim for Dorothy's death pursuant to the Medical Malpractice Act, Ind. Code § 34–18–1–1 *et. seq.,* and that claim can be brought by Hoy directly and does not have to be brought by Dorothy's personal representative. The *McKnight* Court concluded that the Medical Malpractice Act is plain and unambiguous in designating who is allowed to bring claims and that claims can be brought for bodily injury and death. *Id.* at 777. In *McKnight,* the Court dismissed the hospital's argument that the death claim under the Medical Malpractice Act is dependent upon the estate distribution mechanisms inherent in the Wrongful Death statute and thus, without the appointment of a personal representative to trigger the distribution mechanisms, it would be impossible to determine the proper beneficiaries. *Id.* In rejecting this argument, the Court noted:

A trial court is particularly well suited to effect a just and proper distribution of damages if such distribution be necessary. Furthermore, the absence of distribution mechanisms in the Medical Malpractice Act does not render its definitions of those qualified to file a claim dependent on the Wrongful Death Statute.

*Id.* Consequently, because Hoy was entitled to file a claim for his wife's death under the Medical Malpractice Act, his claim would survive his death pursuant to the "survival statute." *See* Ind.Code § 34–9–3–1.

Finally, both parties assert that public policy concerns support their respective positions. Bemenderfer claims that public policy concerns favor the abatement of Hoy's damages. In *Thomas,* the court addressed policy reasons for the abatement of damages after a beneficiary's death. *Id.* at 783. This court concluded that the "recovery of damages in wrongful death actions is only for the purpose of compensating for the pecuniary loss of a surviving spouse or dependent caused by the death of the decedent and to reimburse death creditor beneficiaries." *Id.* Therefore, if a wrongful death claim was allowed to survive the death of the dependent beneficiary of the decedent, "damages would be paid to a person not contemplated by the Wrongful Death Statute, . . ., contrary to the intent of the legislature." *Id.* Accordingly, Bemenderfer contends that allowing Hoy's estate to collect these damages would not serve the purpose of the Wrongful Death statute and would serve only to punish the tortfeasor.

In response, Williams asserts that public policy concerns weigh in favor of her position. Williams argues that a short life expectancy of a surviving spouse should not enure to the benefit of the tortfeasor. By allowing this, Williams argues, we would be telling elders that they must outlive the lengthy legal proceedings of a medical malpractice action if they wish to maintain a remedy for the death of their spouse. Williams further suggests that this creates a strong incentive for defendants and insurance carriers to delay litigation if there is a possibility that the survivor is soon to die. Williams contends that in this case Hoy exhausted his life savings as a result of Bemenderfer's negligence; however, if he had been indigent and lost his caretaker as a result of a defendant's negligence, then the taxpayers would be forced to pay for the cost of his nursing care, and it is contrary to public policy for taxpayers to suffer the consequences of a tortfeasor's negligence while the tortfeasor pays little or nothing. Williams finally argues that sound public policy and principals of justice require that we not reward the tortfeasor because she was "lucky" enough to have not completed her case prior to the death of the decedent's beneficiary.

We agree with Williams that public policy concerns weigh in favor of allowing the recovery of wrongful death damages even though a surviving spouse or dependent beneficiary has died during the pendency of an action.

Therefore, based on the foregoing reasons, we conclude that the trial court properly denied Bemenderfer's motion for summary judgment.

### III. *Damages for Loss of Consortium*

■ Bemenderfer agrees that Hoy, as the spouse of the patient (Dorothy) qualifies under the Medical Malpractice Act to bring a derivative claim for loss of consortium. See *McKnight,* 493 N.E.2d 775 (Ind.1986). After his death, Hoy's derivative cause of action was continued by the personal representative of his estate, pursuant to the survival statute, Ind.Code § 34–9–3–1.

However, Bemenderfer contends that the damages recoverable by Hoy's estate is limited to Hoy's loss of his wife's consortium for the three (3) days from the date of Dorothy's surgery until the date of her death. Bemenderfer claims that Indiana courts have held that when the same act

causing injury also causes the death of the injured party, loss of consortium damages are limited to those incurred during the period of time between the commission of the injury and the date of death. In support of this proposition, Bemenderfer relies on: *Burk v. Anderson,* 232 Ind. 77, 109 N.E.2d 407 (1952); *Long v. Morrison,* 14 Ind. 595 (1860); *Warrick Hospital, Inc. v. Wallace,* 435 N.E.2d 263 (Ind.Ct.App. 1982), *overruled on other grounds by McKnight,* 493 N.E.2d 775 (Ind.1986).; and *DeHoyos v. John Mohr & Sons,* 629 F.Supp. 69 (N.D.Ind.1984).

In discussing loss of consortium damages, the *Burk* court stated: "[T]he period during which recovery may be had for such loss is limited to the time between the date of the commission of the injury and the date of the death of the injured spouse. The right to recover for the continuing losses complained of cannot extend beyond the life of the injured spouse." *Id.,* 109 N.E.2d at 408 (citations omitted).

Williams counters that Hoy's claim for loss of consortium extends beyond Dorothy's death, until the date of Hoy's death on April 9, 1995. Williams maintains that it is logical to extinguish loss of consortium damages at the termination of a marriage, when the termination of the marriage is not caused by the tortfeasor's negligence. However, when a spouse dies and the marriage is ended due to the negligence of the tortfeasor, it is unfair to extinguish the surviving spouse's loss of consortium claim at the date of the decedent spouse's death. If a surviving spouse's loss of consortium claim ends on the date of a decedent spouse's death, the tortfeasor benefits by causing the death of a spouse rather than an injury. If a person is injured as a result of a tortfeasor's negligence, the tortfeasor would be responsible for the injured person's spouse's loss of consortium claim for as long as it is was ongoing, which is either until the loss ends or the marriage ends.

Williams asserts that we should depart from the decision in *Burk,* 232 Ind. 77, 109 N.E.2d 407, and the cases which rely on *Burk,*[4] because *Burk* was not supported by the Indiana cases it cited, and because *Burk* represents an antiquated notion regarding the value of marital relationships.

In *Burk,* our Supreme Court recognized for the first time that women may recover for the loss of their husband's consortium. Prior to that date, the prevailing belief was that women were not so entitled. *Id.* at 408. Williams contends that *Burk's* conclusion that loss of consortium damages terminate at the death of the injured spouse, is not supported by the cases *Burk* cites to support this proposition. William asserts that the *Thompson* case, cited by *Burk,* concerned an action for the death of a child, not a spouse, and therefore does not address the issue of spousal consortium. *Thompson v. Town of Fort Branch,* 204 Ind. 152, 178 N.E. 440 (1931). Another case cited by *Burk, Long v. Morrison,* 14 Ind. 595 (1860), is a case in which the administrator of the decedent's estate sought the equivalent of wrongful death damages. Williams claims that *Long's* discussion regarding the recoverability of loss of consortium damages was dicta and accordingly, not binding.

We agree with Williams that the cases relied on by the *Burk* court, do not fully support the conclusion that loss of consortium damages should be limited to the time between the date of the commission of the injury and the date of the death of the injured spouse.

Moreover, we conclude that public policy favors that when a married individual dies due to the negligence of a tortfeasor and the marriage consequently ends, the surviving spouse's loss of consortium claim should be allowed from the date of the injury causing the decedent spouse's death to the date of the surviving spouse's death. To hold otherwise, would allow a tortfeasor to benefit for causing a married person's death rather than injury.

4. *Wallace,* 435 N.E.2d 263; *DeHoyos,* 629 F.Supp. 69.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Bemenderfer's motion for partial summary judgment.

Affirmed.

MATTINGLY, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

In Indiana, we have three classes of possible beneficiaries under the Wrongful Death Statute:

Class 1 is a surviving widow or widower *and* dependent children if any;

Class 2 is a dependent next of kin; and

Class 3 is made up of service providers.

*Necessary v. Inter–State Towing* (1998) Ind.App., 697 N.E.2d 73, 76, *trans. denied,* and *Wiersma Trucking Co. v. Pfaff* (1994) Ind.App., 643 N.E.2d 909, 911, *adopted on transfer* 678 N.E.2d 110.

If there is anyone in Class 1 to recover, we do not reach the question whether there are any persons who would fall within Class 2. *Necessary v. Inter–State Towing, supra.* In *Necessary,* a claim was filed both by decedent's alleged dependent son and by an alleged dependent next of kin, her grandson. There, we cited *Shipley, Adm'r v. Daly* (1939) 106 Ind.App. 443, 20 N.E.2d 653 for the following proposition:

"[T]here was but one cause of action created by the statute, and it accrued upon the death of the injured party, and inured to the benefit of those named in the statute in the order stated, as of the date of death, and not otherwise. If there are no survivors of the first class, the right is for the benefit of those of the second class, if any, and if none, then for the benefit of those of the third class, but the right when it accrues does not pass upon the death of those of one class of persons to the next class." 697 N.E.2d 73, 79.

In *Necessary* we also appended a footnote which reflected our conclusion that *Shipley* retains viability notwithstanding that it concerned a since amended statute. We observed that:

"Although the *Shipley* court was reviewing the since amended wrongful death statute, the language regarding the hierarchy of classes and 'the distribution in the same manner as personal property of the deceased' has not been substantially altered, and we therefore review the most recent version of the statute with such precedent in mind." 697 N.E.2d at 79 n. 2.

The final paragraph of our opinion in *Necessary* which stated that the son may recover if he proves dependency but also that "[the grandson] may or may not recover" should not be construed as an implication that both the son, if dependent, *and* the grandson, as a next of kin, if also dependent, could recover. 697 N.E.2d at 80. Such implication would be contrary to our clear holding that "a finding of [the son's] dependency precludes [the grandson, as a next of kin] from bringing his dependency claim." 697 N.E.2d at 78.

In short, we held in *Necessary* that if there is a member of Class 1, who may recover damages under the Wrongful Death Act, such determination excludes any putative member of Class 2, *i.e.*, a dependent next of kin (other than a child) from any recovery.

If there is a surviving widower, as here, *and* a dependent child (Williams), then both could recover. However, Williams would be required to establish *dependency,* not merely a financial loss. If Williams is unable to establish dependency, she may not recover because the only eligible person in Class 1 *at the time of death* was Hoy, the widower.

The majority opinion refers to Williams as "next of kin" (a Class 2 beneficiary), rather than as a "child," (a Class 1 beneficiary if she is dependent). Upon the death of a widow or widower pending a wrongful

death judgment, the result differs depending upon whether there remains surviving a dependent child or merely a dependent next of kin. For this reason it is incorrect to view Williams as a "next of kin." In the context of the Wrongful Death Act, a next of kin is someone other than a "child."

In *Wiersma, supra,* the wrongful death claim was made by a mother as a dependent next of kin, *i.e.,* the deceased daughter did not leave surviving either a widower or a dependent child. The issue there was as to the nature of the damages recoverable, *i.e.,* whether loss of love, care and affection were recoverable. *Wiersma* correctly observed that as to beneficiaries of Class 1, damages may include emotional damages, *i.e.,* loss of love, care and affection, in addition to pecuniary loss. The court then extended to Class 2 beneficiaries, *i.e.,* dependent next of kin, the right to also recover for emotional damages as well as for pecuniary loss.

*Wiersma,* however, offers no guidance with respect to the effect of a death of a Class 1 beneficiary after filing of a wrongful death action but before judgment nor as to whether upon such occurrence, a claim may accrue upon behalf of a Class 2 beneficiary, *i.e.,* a dependant next of kin. That contingency is not crucial to our case, however, for despite the majority's reference to Williams as a "next of kin", *i.e.,* a Class 2 beneficiary, Williams is actually a member of Class 1 as a "child," if in fact she is dependent.

It is clear from this scenario that if Williams is able to establish dependency, she may have a wrongful death recovery notwithstanding the death of Hoy. If she were merely an alleged dependent next of kin, she would have no such right of recovery because the failure of a member of Class 1 to survive until entry of a wrongful death judgment does not serve to vest in a hitherto uncognizable Class 2 beneficiary, the right to now assert a wrongful death claim. *Shipley, Adm'r v. Daly, supra.* In short, the identity and rights of beneficiaries under the Wrongful Death Act are

fixed as of the moment of the wrongful death. If the decedent is survived by any length of time by a widow, widower, and/or dependent child, an individual who is a dependent next of kin, but not a child, may not thereafter successfully assert a wrongful death claim. Here, Dorothy was survived by Hoy, her widower. If Williams were merely a dependent next of kin she could not successfully assert a wrongful death claim notwithstanding the death of Hoy prior to recovery of a judgment. The rights of wrongful death beneficiaries are determined by the priorities of the three classes, and they are fixed as of the moment of decedent's death. New prospective beneficiaries may not be added if they had no right of recovery as of the decedent's death.

If the law is to be otherwise, that pronouncement should come presumably from our General Assembly, or at a minimum from our Supreme Court.

The majority quotes from *Dillier* implying that dependency is no longer required, at least with respect to "a next of kin" as opposed to a "child" and that only pecuniary loss is required for recovery. The statute is clearly to the contrary, and even if Hoy's death leaves Williams as a surviving dependent child beneficiary eligible to recover, she may do so only if she proves dependency. Mere pecuniary loss short of dependency is not enough.

I agree that *Community Hosp. of Anderson v. McKnight* (1986) Ind., 493 N.E.2d 775 holds that a child may sue directly under the Medical Malpractice Act without being appointed a personal representative of decedent's estate as required by the Wrongful Death Act. I also agree that the case says the distribution scheme of the Wrongful Death Statute does not preclude a trial court in a Medical Malpractice suit from achieving "a just and proper distribution of damages...." 493 N.E.2d at 777. However, it appears that *McKnight* is susceptible to a construction permitting an "end run" around the

Wrongful Death restrictions as to what damages are recoverable and as to who may recover those damages. It would seem that if a surviving child may not recover for mere pecuniary loss without proving dependency under the Wrongful Death Act, no rational basis would exist for recovery by such person under the guise of a Medical Malpractice suit for the death of the parent.

In summation, with regard to this issue, I interpret the law to be that a claim for wrongful death accrues at the death of the decedent. If, at that time, there is a beneficiary or beneficiaries as set forth in Class 1, even if that beneficiary or all beneficiaries of that Class die before judgment, a claim does not arise on behalf of someone in Class 2, such as a dependent parent, grandchild, brother, sister, etc. Any perceived unfairness [5] in this analysis must be addressed by the General Assembly or our Supreme Court.

I further dissent with respect to Part III concerning Hoy's claimed damages for loss of consortium. Although the cases or some of the cases cited by our Supreme Court in *Burk v. Anderson* (1952), 232 Ind. 77, 109 N.E.2d 407 do not directly compel the holding, *Burk* has not been overruled, even by implication, with respect to this issue. It is, therefore, binding upon this court, and I would hold that Hoy's claim for loss of consortium is limited to the three day period between the surgery performed upon Dorothy and the date of her death.

---

5. If the spouse and/or dependent child or children predeceased the decedent, a dependent next of kin, as a member of Class 2, would be eligible for a wrongful death recovery.